PIGAGE *v.* CHISM.

5-3195                                                    377 S. W. 2d 32

Opinion delivered March 30, 1964.

*Brown, Compton & Prewett,* for appellant.

*Mahony & Yocum,* for appellee.

ED. F. McFADDIN, Associate Justice. The only appellant, E. J. Pigage Jr., is an 11-year-old boy and is

called "Tad." One afternoon in January 1962, while playing with a companion, Tad ran across the road in front of a car being driven by the appellee, Mrs. Chism, and Tad was struck and seriously and painfully injured. By his father, as next friend, Tad sued Mrs. Chism for damages; and Tad's parents each also sought damages because of the injury to the minor and expenses incurred therefrom. The case was tried to a jury; and, among other instructions, the Court, without objection, told the jury:

"If you find from a preponderance of the evidence that Tad Pigage, Junior, was negligent, and that his negligence was the sole and proximate cause of his injuries, or that his negligence contributed to the cause of his injuries, then you are told that the negligence of said plaintiff is attributable to his father and mother, E. J. Pigage, Senior, and Mary E. Pigage, who are also plaintiffs in the case, and that means that negligence on the part of Tad Pigage would be the same as negligence on the part of the father and on the part of the mother, and should be treated as such by you in arriving at your verdict."

The jury returned these three verdicts:

"We the Jury find in favor of the claim of E. J. Pigage, Senior, individually, and assess his recovery in the sum of $2,500.00.

"We, the Jury find in favor of the plaintiff, Mary E. Pigage, individually, and assess her recovery in the sum of $500.00.

"We, the Jury, find in favor of the defendant as to the claim of E. J. (Tad) Pigage, Jr., by and through his next friend, E. J. Pigage, Sr."

Thus the jury refused to allow Tad Pigage Jr. any recovery, but awarded recovery to his mother and father in the amounts stated. The attorneys for Tad Pigage Jr. moved for a mistrial because the verdicts were inconsistent, in that a recovery had been awarded each of the parents and none awarded the boy. The attorneys for Mrs. Chism accepted the verdicts, saying:

"We will accept the verdicts as they are, your Honor. . . . . The Jury has found in favor of the defendant as to the boy . . . Now, standing alone, there is no question about the verdict. Now, if they have found a verdict in favor of the father and the mother in any amount, and the defendant accepts that verdict, then I don't see where the court has any right to declare a mistrial. We are the only ones that could except to that. It is the defendant that could say that the father couldn't recover, or that the moher couldn't recover because the child did not recover, but we are not saying that. We are accepting the verdict, and I don't believe the court has the right, or authority, to set aside the verdict of the jury in favor of the defendant as to the child. If the other two verdicts are erroneous then the people harmed by them are the ones to raise the objection, and we are not raising any. That is our position."

Thereupon, over objections of Tad Pigage Jr., the Court accepted the three verdicts and rendered judgment in accordance with each verdict. Neither of the parents has appealed and each has accepted payment of the judgment awarded; so Tad Pigage Jr. is the sole appellant here and relies on one point, to-wit:

"The Lower Court Erred in Overruling the Plaintiff's Motion For a Mistrial on the Grounds That the Verdicts Were Inconsistent."

It is true that the verdicts are inconsistent in that recovery was refused the principal party (*i.e.*, appellant) but was awarded the secondary parties (*i.e.*, the parents of the appellant); but the appellant can claim no advantage from such inconsistency since there was a definite verdict against him as the principal party. The appellee, Mrs. Chism, if she had so desired, might have urged the matter of the inconsistent verdicts, but the appellant cannot benefit from the inconsistent verdicts under the state of the record before us since he was the primary or principal party and the verdict in his case is the controlling verdict. In 39 Am. Jur. p. 727, in discussing the right of a parent to recover from a third

party for an injury caused by such party to the child, the holdings are summarized:

"Since . . . the parents' cause of action arises out of the injury to the child, an act or omission which would not support an action by the child will not furnish a ground of action by the parent . . . The parent takes his right of action subject to any defense that could be urged against the child in whom the whole cause of action, but for the law, would vest."

The case of *Shiels* v. *Audette,* 119 Conn. 75, 175 A. 323, 94 A.L.R. 1206, was an action by a parent to recover for loss of services and money expended in the care of a minor son who was injured by falling off a truck owned and operated by the defendant; and the Court stated the applicable law in this language:

". . . an essential element of the cause of action vested by law in the parent is that the compensation recoverable by him for expenses flows from a personal injury for which, under the law, the child would be entitled to recover compensation. Proof of that fact is an essential prerequisite to recovery. If the child was not entitled to recover compensation for his injury, there can be no recovery by the parent. 'If the injury occurs under such circumstances as do not give the child a right of action for the personal injury, the father cannot recover.' *Thibeault* v. *Poole* (Mass.), 186 N. E. 632, 635. This principle prevails generally. *Callies* v. *Reliance Laundry Co.,* 188 Wis. 376, 206 N. W. 198, 200, 42 A.L.R. 712; *Tidd* v. *Skinner,* 225 N. Y. 422, 432, 122 N. E. 247, 3 A.L.R. 1145; *Vorrath* v. *Burke,* 63 N. J. Law, 188, 42 A. 838; *Winner* v. *Oakland Tp.,* 158 Pa. 405, 410, 27 A. 1110, 1111; *Wueppesahl* v. *Connecticut Co.,* 87 Conn. 710, 89 A. 166; 46 C.J. p. 1303."

The status of the appellant and the parents, as regards recovery against the appellee, is analogous to the situation of agent and principal, where the agent alone is charged with having committed a tort. When the verdict is in favor of the agent, then the principal is thereby exonerated because the agent is the primary party and

the principal is the secondary party. In *Patterson* v. *Risher,* 143 Ark. 376, 221 S. W. 468, such situation was before us; and here is our holding:

"Now, under the allegations and proof in this record, if there was no negligence on the part of the servants of the appellee Coal Company, which was the proximate cause of the injury to and death of appellant's decedent, and for which none of them were liable, then neither could the appellee Coal Company be held liable. Because, as already stated, there could be no liability of the appellee Coal Company, independent of the acts of its servants which the appellants alleges were the proximate cause of the injury."[1]

In the case at bar, when the jury returned a verdict against the appellant, Tad Pigage Jr., that ended his cause of action. The fact that there was an inconsistency in the secondary verdicts did not give Tad Pigage Jr. any further rights. The defendant accepted the verdicts, and Tad's mother and father have been paid the verdicts awarded them. In asking that the secondary verdicts— in favor of the parents—control over the primary verdict against him, the appellant is, in effect, asking that the "tail wag the dog." Appellant, alone, cannot claim any advantage because of the inconsistency between the primary and the secondary verdicts.

Affirmed.

---

[1] Attention is here called to *Porter-DeWitt Constr. Co.* v. *Danley,* 221 Ark. 813, 256 S. W. 2d 540; *Citizens Coach Co.* v. *Wright,* 228 Ark. 1143, 313 S. W. 2d 94; and *Davis* v. *Perryman,* 225 Ark. 963, 286 S. W. 2d 844.